UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MORRIS V. HIRES, JR.,

         Plaintiff,


v.                           Case No. 8:07-cv-1315-T-24MSS


CITY OF ST. PETERSBURG,
ROBERT M. LORD, AND
ST. PETERSBURG POLICE DEPARTMENT,

         Defendants.

_____


O R D E R

    This cause is before the Court on Defendant Robert Lord's motion for summary judgment based on qualified immunity (Doc. No. 17); Defendant City of St. Petersburg (City's) motion for summary judgment (Doc. No. 15); Plaintiff Hires' response to the motions with affidavit in support. (Doc. Nos. 30, 31).   Robert Lord and the City are the only remaining Defendants in this case, as the City of St. Petersburg Police Department was dismissed as a Defendant on July 30, 2007. (See Doc. No. 3)

Background

    Plaintiff Morris V. Hires filed a 42 U.S.C. § 1983 complaint alleging that Defendant Officer Robert M. Lord violated Hires' Fourth and Fourteenth Amendment rights when

Defendant Lord, a St. Petersburg Police Officer, detained and arrested Hires without probable cause on March 14, 2006. He also alleges that Officer Lord subjected him to "excessive force and brutality" when he arrested Hires. Hires also seeks damages from the City.

Hires, an inmate at Coleman Correctional Facility, Coleman, Florida, alleges, in his complaint:

> On March 14, 2006 at 2:46 a.m. while walking home down 18th Avenue South St. Petersburg Fl. I was assaulted by Officer Lord in wich [sic] I receive [sic] laserations [sic] to lip, back, and knees.  I was also beaten with a police baton in the face which resulted in me [sic] having my teeth knocked out and I was taser [sic] in my back.  This has caused perminent [sic] damage of my physical apperance [sic].  By this it has affected me mentaly [sic] and since have formed a phobia of any type of law enforcement or correctional officer. I do not confide & trust in nor feel safe comming [sic] into contact alone with someone of this status and feel as though my life is in peril or immediate danger.

As relief, Hires states that he:

> would like the City of St. Petersburg Fl. [sic] to fully compensate me for physical disfiguration, pain and suffering and all mental descrepencies I have developed from this incident.  I'd like to be awarded $5 Million dollars for injury and $5 million punitive damage and complete rescinding of conviction and sentence within federal jurisdiction as "The State" forwarded it for federal jurisprudence.

(Doc. No. 1)

Following his arrest, a federal criminal complaint was filed against Hires on April 3, 2006 by a special agent with the Bureau of alcohol, Tobacco, Firearms and Explosives (ATF).  The federal criminal complaint charged Hires with being a felon in possession of a firearm on or about March 14, 2006, in violation of 18 U.S.C. § 922(g)(1).   In his supporting affidavit, the agent averred that :

> On or about March 14, 2006, a SPPD uniformed officer was traveling

in a police unit when he observed two (2) occupants in a vehicle with an unreadable license plate traveling East on 18th St. South in St. Petersburg, Florida.  As the uniformed officer attempted to pull behind the vehicle to query the suspicious license plate, the officer noticed that the occupants in the vehicle appeared not to be wearing their seatbelts.  As the officer approached in anticipation of stopping the vehicle for these infraction(s) he became aware that the driver of the vehicle had noticed the officer's presence and abruptly turned into a local food market. As the vehicle slowly came to a stop, the passenger of the vehicle -- later identified as the defendant, Morris HIRES, Jr. -- fled the vehicle on foot and was ordered to stop.  When HIRES failed to obey the officer's commands of "Police, stop," the officer pursued HIRES on foot.  The officer ultimately managed to apprehend HIRES, and found a Colt, model Colt Combat Commander, .45 caliber pistol, bearing serial number 70SC51176 in his possession.

Following HIRES' arrest, he was Mirandized by SPPD Officer Robert Lord, acknowledged that he understood those rights, and agreed to apeak with Officer Lord. During an ensuing interview, HIRES admitted to possessing the firearm found on him at the time of his arrest, stating that he had purchased it on the "street" for five hundred dollars ($500).

(*United States v. Hires,* 8:06-mj-1121-TGW, Doc. cr-1).

On April 12, 2007, the Grand Jury returned an Indictment charging Hires with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) and 924(e) (Count One) and possession of a mixture or substance containing cocaine, in violation of 21 U.S.C. § 844(a)(Count Two). *(United States v. Hires*, 8:07-cr-120-T-30MSS, Doc. cr-1) .  On May 18, 2007, Hires, through appointed counsel, filed a motion to suppress evidence in his criminal case, 8:07-cv-120-T-30MSS (Doc. cr-27).  On May 29, 2007, the Court held an evidentiary hearing on the motion to suppress evidence at which Officer Lord and Defendant Hires testified. On June 4, 2007 the district court entered an order denying the motion to suppress.

In that order, United States District Judge William J. Castagna found that the testimony of Officer Lord was credible while that of Defendant Hires was not.  The order

reads, in pertinent part:

> Having heard the testimony of Defendant [Hires] and Officer Lord and observed their demeanor, the Court does not find the testimony of Defendant credible and finds the testimony of Officer Lord credible in its totality.

> In this regard, first, Defendant has a substantial stake in the outcome of these proceedings.  He faces a term of imprisonment of not less than 15 years as to Count One of the Indictment in this case charging possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  Second, Defendant is a six-time convicted felon who is not unfamiliar with the court system and who was admittedly on parole at the time of the events giving rise to the charges in this case. Third, Defendant has four prior drug convictions, and is an admitted drug dealer.  He testified at the hearing that he was actually **selling** crack cocaine on the three occasions that he charged with **possession** of crack cocaine in State court.  Fourth, Defendant's testimony that Officer Lord issued him a citation for failure to wear a seatbelt when Defendant was simply walking down the street (rather than riding in a vehicle) simply defies logic. Finally, Defendant's testimony contradicts that of Officer Lord, whose testimony is supported by a written police report relating to the incident.

> On the other hand, the Court finds Officer Lord's testimony wholly credible.  Notably, Officer Lord's testimony was supported by a police report relating to the incident, which he referred to at various times during his testimony.  Defendant did not object to Officer Lord's reference to the report and, further, Defendant failed to point out any significant inconsistency between Officer Lord's testimony at the hearing and the written police report.[1]  Additionally, Officer Lord's testimony that he was attempting to conduct a traffic stop relating to a car in which Defendant was a passenger is also supported by the unrebutted fact that Officer Lord issued Defendant a traffic citation for a seatbelt violation.

> For these reasons, the Court rejects Defendant's testimony to the extent that it conflicts with the testimony of Officer Lord and accepts as true Officer Lord's testimony.  The Court now turns to the issue of whether Officer Lord's seizure and arrest of Defendant violated the Fourth Amendment.

(*United States v. Hires*, 8:07-cr-120-T-30MSS at Doc. cr-33 at pp. 9-11)

---

[1] Officer Lord admitted that his statement in the written police report that the vehicle was traveling down "18th Street" was a scrivener's error and should have stated "18th Avenue."  The Court does not find this inconsistency significant.

The United States District Judge also found that the traffic stop of the vehicle in which Hires was a passenger was lawful and that Officer Lord had probable cause to stop and arrest Hires:

> . . . [t]he seizure and arrest of Defendant [Hires] did not violate the Fourth Amendment.  Specifically, the credible evidence of record demonstrates that Officer Lord was attempting a valid traffic stop.  He had pulled his cruiser behind the vehicle and activated the lights.  When Defendant ran from the car, Officer Lord told him to stop and then gave chase.  Defendant continued to run, and when Officer Lord caught up to him, Defendant threw officer Lord to the ground and a scuffle ensued.  When Defendant was free, he began to run again and only stopped after Officer Lord tasered him.  Under *United States v. Bonner*, 363 F.3d 213 (3d Cir. 2004), *cert. denied,* 543 U.S. (2005),, Defendant's flight from a lawful traffic stop "in which the officers are authorized to exert superintendence and control over the occupants of the car" constituted reasonable suspicion for his seizure.
>
> Even if the Court were to reject the holding in *Bonner,* Defendant's motion to suppress would still fail.  Notably, the presence of a combination of other factors also justified the seizure of Defendant.  As previously indicated, presence in a area of high crime or high drug trafficking coupled with unprovoked flight upon noticing the police constitutes reasonable suspicion for a stop.  *Illinois v. Wardlow*, 528 U.S. 119 (2000) (wherein the Court explained, "[h]eadlong flight-wherever it occurs-is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.");  *accord Franklin*, 323 F.3d 1298;  *United States v. Neely*, No. 06013651, 2007 WL 433520 (11th Cir. Feb, 8, 2007) (affirming finding that investigatory stop was based on reasonable suspicion where (1) defendant was  in an area known for criminal activity;  (2) he was accompanied by a known narcotics dealer; and (3) defendant and passenger fled without provocation when they saw the detective).

(*United States v. Hires*, Doc. cr-3 at pp 17-19)

After jury trial on June 11-13, 2007, Hires was found guilty as charged in the Indictment.  The district court sentenced Hires to 235 months as to Count One and to 12 months as to Count Two with the sentences running concurrently.  Judgment was entered September 9, 2007. (*United States v. Hires*, Doc. cr-64).

DISCUSSION

**1.  Defendant Lord's Motion for Summary Judgment**

A. Probable Cause

Because the United States District Judge found that Officer Lord had probable cause to arrest Hires on March 14, 2006, and did not violate Hires' Fourth and Fourteenth Amendment rights by doing so, Hires is collaterally estopped from raising the claim that Officer Lord violated his Fourth and Fourteenth Amendment rights in his present 42 U.S.C. § 1983 complaint.

Collateral Estoppel

Collateral estoppel, or issue preclusion, is an affirmative defense barring a party from relitigating an issue determined against that party in an earlier action, even if that action differs significantly from the first one.  The district court can raise collateral estoppel sua sponte. *Simmons v. Chatham Nursing Home, Inc.*, 93 F. Supp.2d 1265 (S.D. Ga. 1265, 1268 (2000)(citing *Studio Art Theater of Evansville, Inc. v. City of Evansville*, 76 F.3d 128, 130 (7th Cir. 1996)).  The rules of collateral estoppel apply with full force to civil rights actions arising under 42 U.S.C. § 1983 . *Allen v. McCurry*, 449 U.S. 90, 103-05 (1980).

Here,  collateral estoppel arises out of an order and judgment in one of this Court's earlier cases, and is based on this Court's records.  Continuity and  deference to a prior judge's decision promote judicial economy in this situation. *Simmons*, 93 F. Supp. 2d at 1268 (citing *Warnock v. Pecos Cty.,* 116 F.3d 776, 778 (5th Cir. 1997)).

Because this Court is considering the preclusive effect of a prior *federal* court judgment,  federal law must apply.  *Simmons*, 93 F. Supp. 2d at 1266 n.1 (citing *Edwards v. Alabama Dept. of Corrections*, 81 F. supp. 2d 1242, 1247 (M.D. Ala. 2000)(citing

6

*Agripost, Inc. v. Miami-Dade County*, 195 F.3d 1225, 1230 n.11 (11th Cir. 1999)). The federal standard for collateral estoppel was announced in *Precision Air Parts v. Avco Corp.*, 736 F.2d 1499 (11th Cir.1984), *cert. denied*, 469 U.S. 1191 (1985), in which the Eleventh Circuit listed three prerequisites to a determination of collateral estoppel: "(1) ... the issue at stake [must] be identical to the one involved in the prior litigation; (2) ... the issue [must] have been actually litigated; and (3) ... the determination of the issue in the prior litigation [must] have been a critical and necessary part of the judgment in that earlier decision." *Avco*, 736 F.2d at 1501 (quoting *Deweese v. Town of Palm Beach*, 688 F.2d 731, 733 (11th Cir.1982)).[2]

For purposes of issue preclusion, "final judgment" includes any prior adjudication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect. *ALI, Restatement of Judgments 2d*, Tent. Draft No. 1, § 41 (1973); *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 87-90 (2d Cir.1961), *cert. denied*, 368 U.S. 986 (1962); *Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir.), *cert. denied*, 377 U.S. 934 (1964). Factors supporting a conclusion that a decision is final for this purpose are that the parties were fully heard, that the court supported its decision with a reasoned opinion, [and] that the decision was subject to appeal or was in fact reviewed on appeal. *Restatement, supra*, § 41 at 7.

An issue is "necessarily determined" for purposes of the application of the doctrine

---

[2] Florida law is the same as federal law. *Avco*, 736 F.2d at 1501 (quoting *Deweese v. Town of Palm Beach*, 688 F.2d 731, 733 (11th Cir.1982)). Florida law authorizes use of defensive collateral estoppel in the criminal-to-civil context. *Brown v. City of Hialeah*, 30 F.3d 1433 (11th Cir. 1994). The Florida Supreme Court in *Zeidwig v. Ward*, 548 So. 2d 209 (Fla. 1989) "approve[d] the use of defensive collateral estoppel to prevent a criminal defendant, as a plaintiff, from relitigating the same issue which has been litigated in prior criminal proceedings." *Id.* at 209. *See Vazquez v. Metropolitan Dade County*, 968 F.2d 1101, 1107 (11th Cir. 1992) (It is clear that Florida does permit the use of defensive collateral estoppel in a criminal-to-civil context).

of collateral estoppel, if, in the absence of a determination of the issue, the judgment could not have been validly rendered.  In applying the doctrine of issue preclusion or collateral estoppel, courts may require that the determination of the issue sought to be precluded was essential to the final judgment in the prior action; necessarily decided, or adjudicated, to support the prior judgment, and not merely dictum. *Amjur Judgments* § 496.  An issue is necessarily determined for issue preclusion purposes if, in the absence of a determination of the issue, the judgment could not have been validly rendered. *Powell v. Infinity Ins. Co.,* 282 A. 2d 1073 (2007).

United States District Judge William Castagna's findings in his order denying Hires' motion to suppress the evidence were necessary for Hires' criminal case to proceed to trial and judgment.[3] The parties were fully heard at the hearing on the motion to suppress; the court supported its decision with a reasoned opinion; and the decision was subject to appeal.  Hires is currently appealing the judgment and conviction in his criminal case. (Doc. cr. 65).  Therefore, Hires is collaterally estopped from relitigating his claim that Officer Lord did not have probable cause to stop and arrest him on the night of March 14, 2006 in his present 42 U.S.C. § 1983 complaint.

### B.  Excessive Use of Force

Because Hires' Fourth Amendment excessive use of force claim was not previously litigated in his criminal case, he is not collaterally estopped from raising the claim in his present 1983 action.

In an excessive force case arising out of an arrest, whether a constitutional violation

---

[3]  Hires was convicted of being a felon in possession of a firearm and of possessing cocaine.

occurred is governed by the Fourth Amendment's "objective reasonableness" standard. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (citing *Tennessee v. Garner*, 471 U.S. 1, (1985), and *Graham v. Connor,* 490 U.S. 386 (1989)). A genuine "excessive force" claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest. *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir.2006). Several factors determine whether an officer's use of force was objectively reasonable, including "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir.2000).

### 1. Officer Lord's Account of the Force Used

Officer Lord claims after the driver of the vehicle in which Hires was a passenger noticed Officer Lord's police cruiser behind the vehicle, the driver made an abrupt turn into a parking lot. Officer Lord "pulled in behind the vehicle." Before Officer Lord could activate his overhead emergency lights and while the vehicle was still in motion, Hires opened the passenger's side door and leaned out, preparing to run. As soon as the car "came nearly to a stop." Hires ran away from the vehicle. Officer Lord ordered him to stop, shouting, "Police, stop!" but Hires continued to run. Hires tripped over a concrete curb and fell "flat on his face." (Attachment 1 to Doc. No. 16, Exhibit A). When Officer Lord attempted to grab Hires to restrain him, Hires tried to strike Officer Lord with his right hand several times. (Attachment 1 to Doc. No. 16, Exhibit A). Hires progressively became more aggressive to the point that Officer Lord was forced to used his taser twice to subdue Hires. (Attachment 1 to Doc. No. 16, Exhibit A). Officer Lord avers that at no time during the

9

struggle did he strike Hires with a police baton in the face or anywhere else.  (Attachment 1 to Doc. No. 16, Exhibit A).  After Hires was subdued, the police found cocaine, a semi-automatic handgun and cash wrapped up in a sweatshirt and T-shirt that had "come off" Hires during his struggle with Officer Lord. (Attachment 1 to Doc. No. 16, Exhibit A).

## 2. Hires' Account of the Force

Hires claims that  Officer Lord attacked him without warning. For no reason, Officer Lord shot Hires with his taser gun, causing Hires to fall to the ground.  Then while Hires was incapacitated, Lord walked up to Hires and struck him with his night stick baton in his mouth.  During these events, Lord stated: "Nigger, don't you try to run from me!"  Then Lord struck Hires on his wrist with the night stick baton. After a civilian yelled: "I see what you're doing," Lord stopped his attack on Hires.  (Doc. No. 30 at pp. 3-4).

Hires avers that he never ran from Officer Lord, and contends that Officer Lord's actions were based on his ill will and malice toward him because Hires is black.  (Doc. No. 31).  He contends that he never fell over a concrete curb of any kind, since he never ran. He further contends that the only falling he did during the early morning hours of March 14, 2006 was as a direct result of Defendant Lord's tasering him. (Doc. No. 31).

Hires claims that he attempted to talk to Officer Lord and "attempted to ease and relieve the tension of the situation, calming it down by explaining and cooperating with Defendant Lord."   He claims that he was not resisting arrest.

## Standard of Review for Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Vinyard v. Wilson*,

311 F.3d 1340, 1346 (11th Cir.2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting 'within the scope of his discretionary authority.' " *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir.2004) (quoting *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir.1995)).

Once it is established that the Defendants were acting within their discretionary authority, the burden shifts to the Plaintiff to prove that qualified immunity is not warranted. *Vinyard*, 311 F.3d at 1346. The Supreme Court has articulated a two-part test in the qualified immunity analysis. First, the court must determine whether the plaintiff's allegations establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (stating that the court must evaluate the complaint to determine if, assuming the allegations are true, it pleads a cognizable violation of the constitution). If this is answered in the affirmative, the court's next step is to determine whether the right in question was clearly established. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (stating that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.")). In essence, a defendant is entitled to "fair warning" that his alleged conduct would be unconstitutional. *Hope*, 536 U.S. at 741.

Hires must satisfy both prongs set out in *Saucier* to establish the inappropriateness of extending qualified immunity to any Defendant in this matter. As the Supreme Court has

11

announced: "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier* at 202.

In the Eleventh Circuit, "for the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors in the defendants' place, that what he is doing violates federal law." *Jenkins v. Talladega City Board of Education*, 115 F.3d 821, 823 (11th Cir. 1997)(en banc)(citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"[A] public official is entitled to qualified immunity unless, at the time of the incident, the preexisting law dictates, that is, truly compel[s], the conclusion for all reasonable similarly situated public officials that what [the official] was doing violated [the plaintiff's] federal rights in the circumstance." *Wilson v. Zellner*, 200 F.Supp. 2d 1356, 1360 (M.D. Fla. 2002), (citing *Marsh v. Butler County*, 268 F.3d 1014, 1030-31 (11th Cir. 2001)(en banc)).

### Office Lord Is Not Entitled To Qualified Immunity

It is undisputed that on March 14, 2006, Defendant Officer Lord was acting within his discretionary authority as a law enforcement officer.  Therefore, the burden shifts to Hires to show that qualified immunity is not warranted.  Hires must demonstrate that his allegations establish a cognizable constitutional violation and that the right in question (in this case, the Fourth Amendment right to be free of excessive force during an arrest) was clearly established on March 14, 2006, so that a reasonable officer would have known that what he was doing violated federal law.

Taking the facts in the light most favorable to Plaintiff Hires, Hires' allegations that

Officer Lord shot him with his taser gun and hit him with his night stick baton when Hires was not resisting arrest, pleads a cognizable violation under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). *See R.A. v. Lacey*, 2007 WL 951830 at *6 (M.D. Ala. Mar. 27, 2007) (Hitting defendant several times with a baton when he was not resisting arrest was unreasonable, excessive use of force). Hires has met the first part of the two-part test in a qualified immunity analysis because his allegations establish a cognizable constitutional violation.

Next, the Court must determine whether the cognizable constitutional right was clearly established;  that is, would it have been clear to a reasonable officer that Officer Lord's conduct was unlawful during his arrest of Hires on March 14, 2006.

Again, taking the facts in the light most favorable to Plaintiff Hires, and resolving all reasonable doubts in his favor, it should have been clear to Office Lord that the amount of force he used in arresting Hires was unlawful.  At the time of the arrest, Eleventh Circuit law was clearly established that a non-resisting defendant has the right to be free from excessive force during an arrest. *See Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002).

In *Slicker*, 215 F.3d at 1233, the Eleventh Circuit held that force was excessive where officers kicked a handcuffed and non-resisting defendant in the ribs and beat his head on the ground.  In *Hadley v. Gutierrez*, 2008 WL 1947008 at *7 (11th Cir. Fla., May 6, 2008) the Eleventh Circuit found that an officer used excessive force when he punched the arrestee in the stomach even though the arrestee was handcuffed and not struggling or resisting.

In *Hadley*, 2008 WL at 1947008 at *7 (11th Cir. Fla., May 6, 2008), the Eleventh Circuit reiterated its announcement made in *Skritch v. Thornton*, 280 F.3d 1295, 1303 (11th

13

Cir. 2002):

> By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated. *See Harris v. Chapman*, 97 F.3d 499, 505-06 (11th Cir.1996); *Davis v. Locke*, 936 F.2d 1208, 1212-13 (11th Cir.1991); *Williams v. Cash-C.O.I.*, 836 F.2d 1318, 1320 (1988); *Perry v. Thompson*, 786 F.2d 1093 (11th Cir.1986).

The *Hadley* Court further stated that "the excessive force standard would inevitably lead every reasonable officer . . . to conclude that the force" used here -- punching a non-resisting criminal suspect for no apparent reason other than malice -- is not protected by our constitution. *Hadley* at *7 (citations omitted).

Hires alleges that he was not resisting Officer Lord when Officer Lord shot him with his taser gun and hit him in the mouth with his night stick baton.  Hires contends that he was attempting to talk to Officer Lord and was not resisting arrest. The law is clearly established that Officer Lord could not taser Hires and hit him with a night stick baton if Hires was not resisting, and material facts are in dispute as to whether Hires was running away and resisting arrest. Therefore, Officer Lord is not entitled to qualified immunity on the issue of excessive use of force at the time of the arrest.

## 2. City of St. Petersburg's Motion for Summary Judgment

The City alleges that it is entitled to summary judgment as a matter of law because Hires has not shown 1) that his constitutional rights were violated; 2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and, 3)  that the policy or custom caused the violation.

In his response to the City's motion for summary judgment, and in his affidavit, Hires claims that the City is liable as a policy maker because the City acquires tasers for police

14

officers and arranges for training its police officers in using the tasers. He also claims that the City has a policy of providing night stick batons and training police officers in the use of the batons. (Doc. Nos. 30, 31).   However, Hires does not identify the policy to which he refers.

Standard of Review for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325.  Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim.  *See id.*  When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  *See Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).   The

15

Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences n favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A municipality may not be held vicariously liable under 42 U.S.C. § 1983 solely because the city employs a tortfeasor who is alleged to have committed wrongful conduct within the scope of his or her employment. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978) (finding that section 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"). Municipal liability under section 1983 is limited to governmental wrongs caused by the government's policymaking, and Hires must identify a municipal "policy" or "custom" that caused the injury. *Pembaur v. Cincinnati*, 475 U.S.

16

469, 480-81 (1982).  "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable." *City of Canton v. Harris*, 489 U.S. 378, 384 (1989).  Thus, liability may not be imposed on a municipality under section 1983 for an injury caused solely by the conduct of its employee, and the fact that Hires suffered a deprivation of federal rights at the hands of a municipal employee does not imply that the municipality is culpable or caused the deprivation. *Bd. of County Comm's v. Brown*, 520 U.S. 397, 403 (1997).

Further, as the United States Supreme Court stated in *Brown*, a "policy" giving rise to liability cannot be established merely by identifying a policymaker's conduct that is properly attributable to the municipality.  The Plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the alleged injury. *See Monell, supra*, at 694.  A plaintiff must show that the municipal action was taken with "the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Davis ex rel. Doe v. DeKalb County School Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000).  Hires has not shown this to be so in his case.

In *McDonnell v. Brown*, the Eleventh Circuit stated "to impose section 1983 liability on a municipality, a plaintiff must show: 1) that his constitutional rights were violated; 2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and 3) that the policy or custom caused the violation. *McDonnell*, 392 F.3d 1283, 1288 (11th Cir. 2004)(citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Hires has not alleged any policy or custom attributable to the City of St. Petersburg that caused a constitutional violation. Liability may not be imposed on the City under

17

section 1983 for an injury caused solely by the conduct of its employee, and the fact that Hires suffered a deprivation of federal rights at the hands of a municipal employee does not imply that the municipality is culpable or caused the deprivation. *City of Canton v. Harris*, 489 U.S. 378, 384 (1989).

Because no genuine issue of material fact remains as to Hires' claims against the City, the City is entitled to summary judgment as a matter of law.

**Accordingly, the Court orders:**

1. That, because Hires is collaterally estopped from raising the claim that Defendant Lord violated his rights under the Fourth and Fourteenth Amendments by arresting him without probable cause on March 14, 2006, Defendant Lord's motion for summary judgment (Doc. No. 15) is granted on this issue.

2. That Defendant Lord's motion for summary judgment based on qualified immunity as to Hires' Fourth Amendment excessive use of force claim (Doc. No. 15) is denied.

3. That the City of St. Petersburg's motion for summary judgment (Doc. No. 17) is granted.

Discovery dates will be set by separate order.

ORDERED at Tampa, Florida, on May 12, 2008.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Morris Vernell Hires, Jr.

18